David A. Kubichek WSB #5-2534
Assistant United States Attorney
District of Wyoming
P.O. Box 22211
Casper, WY  82602-5010
307-261-5434
david.kubichek@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **MICHAEL ANTHONY SMITH,**  Petitioner,  v.  **UNITED STATES OF AMERICA,**  Respondent. | Civil No. 23-CV-203-J |

**UNITED STATES RESPONSE TO DEFENDANT'S
MOTION TO VACATE UNDER 28 U.S.C. § 2255**

On October 31, 2023, the Defendant Michael Anthony Smith (Defendant) filed a motion under 28 U.S.C. § 2255 which seeks an order from this court setting aside his guilty plea and his 70 month prison sentence on the grounds that he was the victim of ineffective assistance of counsel, and had been railroaded into pleading guilty by a corrupt and racist justice system. As we note below, however, the Defendant's claims concerning ineffective assistance of counsel are conclusory at best, and in any event don't establish that his lawyer's performance was in any way deficient, or that any such possible deficiency caused him prejudice. And his other claims amount to little more than baseless attacks on the legitimacy of the justice system under which he was convicted, and cannot serve as a basis for collateral relief. And even assuming the Defendant's complaints were plausible (they aren't), the Defendant never asserts – and based on the record,

plainly couldn't assert – that he was somehow actually innocent of the charges to which he pleaded guilty.

His motion must accordingly be denied.

## BACKGROUND

This case began on September 29, 2020, when Wyoming Highway Patrol Trooper Joshua Gebauer observed the Defendant travelling eastbound outside Cheyenne, Wyoming, on U.S. Interstate Highway I-80, at about 81 mph, 6 mph over the posted speed limit of 75 mph (PSR at 4; Doc. 98 at 1-2 [Order denying suppression motion]).[1] The trooper followed the Defendant until he exited the Interstate, and then a brief period later found the Defendant at a gas pump at the Flying J Truck Stop outside Cheyenne, Wyoming (PSR at 4; Order at 2).

While the Defendant was refueling his vehicle, Trooper Gebauer left the Flying J parking lot and relocated to the parking lot of a nearby hotel (Order at 3). From the hotel parking lot, he maintained visual surveillance of the Defendant, and watched him move his vehicle, after refueling it, to another location on the Flying J property. After doing so, Gebauer observed the Defendant use multiple cell phones to make calls, smoke several cigarettes, and unlatch and open the trunk of his vehicle, after which he walked away from it and apparently entered the Flying J (*Id.* at 3; PSR at 5).

While conducting this surveillance, Trooper Gebauer contacted DCI Agent Tyler Matheney and requested he come to the Flying J and assist (Order at 3; PSR at 5). Matheney did report to the Flying J, in an unmarked vehicle and in plain clothes (Order at 3). Upon arriving at that location, Agent Matheney walked past the open trunk of the Defendant's vehicle, and immediately smelled the odor of raw marijuana emanating from it (PSR at 5; Order at 3-4). Upon

---

[1] The court's order denying the Defendant's suppression motion will be cited as "Order."

receiving this news, Trooper Gebauer moved his vehicle from its distant location back to the Flying J property and parked it behind the Defendant's unoccupied vehicle (PSR at 5; Order at 3-4). Cheyenne Police Department Officer Johnson also arrived at the scene around this time, and he deployed his K-9 partner, Pavel, who positively indicated the presence of the odor of controlled substances coming from the Defendant's still unoccupied vehicle (PSR at 5; Order at 4).

Based on Matheney's and Pavel's separate observations, the officers began searching the Defendant's vehicle, the result of which was the discovery of significant quantities of methamphetamine and marijuana (PSR at 5; Order at 4).

While the search was being conducted, Matheney and Gebauer went inside the Flying J and eventually found the Defendant playing a slot machine (Order at 4). Upon contacting him, the Defendant seemed confused and had difficulty responding to questions, but did indicate he had just smoked marijuana outside (*Id.*). Eventually, the Defendant was arrested. During his subsequent *Mirandized* interview, the Defendant admitted he was a regular trafficker in illicit drugs, and that he knew he had been transporting controlled substances when he was arrested (Order at 5; PSR at 5).

The Defendant was charged by indictment with possessing marijuana and methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (Crim. Doc. 1). He filed a motion to suppress the fruits of the search of his vehicle, but that motion was denied on March 10, 2023 (Order). On March 6, 2023, based in part on his understanding the court would be denying his suppression motion, the Defendant entered a guilty plea pursuant to a plea agreement with the government (Doc. 96 [minutes of change of plea hearing]; Doc. 94 [Plea Agreement]; Doc. 129 [Change of Plea Transcript] (COP Tr.)).

Count One of the indictment originally charged the Defendant with possessing more than 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Vol. I, Doc. 96; Vol. IV, COP Tr. at 1). But pursuant to his plea agreement, he was permitted to plead guilty to the lesser included offense of possessing 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(B) (Vol. I, Doc. 94 at 1-2). His guilty plea was entered pursuant to Rule 11(c)(1)(C), Fed. R. Crim. P. (Vol. I, Doc. 94). In that regard, the plea agreement specified that the Defendant would be sentenced to a term of imprisonment of between 60 and 78 months (*Id.* at 4 [¶ 9]).

In addition to the foregoing, the plea agreement also included an appeal and collateral attack waiver:

> **Waiver of Appeal and Collateral Attack**
>
> 15.     Subject to the specific exceptions below, the Defendant knowingly and voluntarily waives any right to appeal any matter in connection with this prosecution, his conviction, or the components of his sentence. The Defendant also waives any right to challenge his conviction or sentence in any post-conviction collateral attack, in whatever form, including but not limited to a motion under 28 U.S.C. § 2255. The following are exceptions to this waiver:
>
> a.   If the court sentences the Defendant based on an upward departure from the otherwise-applicable advisory Sentencing Guidelines range, or an upward variance above the applicable range, the Defendant may appeal the departure or variance.
>
> b.   Subject to the applicable requirements of § 2255 or other law, the Defendant may raise a claim that he was prejudiced by ineffective assistance of counsel.
>
> c.   Subject to the applicable requirements, the Defendant may seek any available sentencing reduction under 18 U.S.C. § 3582(c).
>
> d.   Subject to the applicable requirements of § 2255 or other law, the Defendant may raise a claim that he was prejudiced by prosecutorial misconduct.

(Doc. 94 at 5-6).

4

The Defendant's change of plea hearing was on March 6, 2023 (COP Tr.). When that hearing commenced, the district court first put the Defendant under oath and confirmed that he was not under the influence of alcohol or drugs, and was not adversely affected by his prescribed medications (COP Tr. at 3-6). During his plea colloquy under Rule 11, Fed. R. Crim. P., the Defendant acknowledged his plea agreement, and agreed that his lawyer had read it to him in full before he signed it, had discussed its terms with him, and that he understood all of it (*Id.* at 6-8).[2] The court further reviewed the charges to which he was proposing to plead guilty, including the essential elements of each, and the penalties that applied to those charges (*Id.* at 11-13 [maximum penalties, supervised release, monetary penalties, good time credits, and other sentencing matters] and at 20-22 [elements of offense]). In connection with that colloquy, the Defendant specifically acknowledged that by virtue of his plea agreement with the government, he would be barred from pursuing an appeal should the court agree to accept its terms (*Id.* at 17-18). The Defendant also indicated his understanding of the other rights he was waiving by pleading guilty (*Id*. at 18-21).

In addition, after the Defendant formally entered his guilty plea, and indicated once again that it was wholly voluntary and made because he believed himself guilty of the crime to which he was pleading guilty (*Id.* at 23), he provided the court with a fully sufficient factual basis for his plea (*Id.* at 23-25). Following the Defendant's guilty plea and factual basis, the district court found his plea to be competently made, was knowing and voluntary, and supported by an independent basis in fact based both on the Defendant's admission during the change of plea hearing as well as the evidence from the officers who testified at his suppression hearing (*Id.* at 25-26).

The case proceeded to sentencing on May 25, 2023 (Sent. Tr. at 1). At the outset of the sentencing proceeding, Defendant's counsel asked the court if he and his client could have an *ex*

---

[2] The Defendant indicated he had a vision issue that made his actually reading the agreement difficult to impossible (COP Tr. at 7-8).

5

*parte* conversation with the court concerning sundry complaints the Defendant had about his treatment in the case and what he thought were grounds for him being released from his guilty plea and being allowed to go to trial (Sent. Tr. at 5; Vol. III [sealed transcript] at 9-16). The crux of that *ex parte* conversation was what could only be characterized as a long rant during which the Defendant took issue with the outcome of the suppression hearing, his frustration at a process he believed was "rail-roading" him into jail, and like concerns (*Id.*, Vol. III at 9-19). At the conclusion of his diatribes, however, the Defendant agreed he should proceed to sentencing, or as he put it, "finish the railroad" (*Id.* at 17-20).

After hearing the Defendant out, the court ultimately determined to treat the Defendant's statements as a request to withdraw his guilty plea, which request the court denied (*Id.* at 20-21). That was so because, the court noted, the Defendant's guilty plea was taken under oath and in full compliance with the requirements of Rule 11, including a fully sufficient factual basis established both by the Defendant's sworn statements at his change of plea hearing and the evidence the court heard during the Defendant's suppression hearing (*Id.* at 17-21).

With that, the proceeding went back on the record in public session, and the court proceeded to sentence the Defendant to 70 months in custody, roughly in the middle of the 60-78 month range stipulated in the Defendant's Rule 11(c)(1)(C) plea agreement (Sent. Tr. at 33).

Following his sentencing, and contrary to his waiver of his appellate rights as a part of his plea agreement, the Defendant filed a notice of appeal (Doc. 108). The United States moved to enforce his appellate waiver, and on October 3, 2023, the court of appeals dismissed his appeal on that basis (Doc. 144).

The Defendant's current motion under 28 U.S.C. § 2255 was filed on October 31, 2023. It is timely for purposes of § 2255(f)(1)'s one year limitation period. *See United States v. Prows*, 448 F.3d 1223, 1227-28 (10th Cir. 2006).

## **DISCUSSION**

As noted above, in his § 2255 motion, the Defendant appears to have raised the following claims:

1. The court's denial of his suppression motion was in error.

2. Defendant's lawyer was ineffective at suppression hearing by not citing correct case law, and by conceding the Defendant consented to search.

3. Defendant's lawyer was ineffective for promising the Defendant he would get only 60 months in prison, rather than the 70 months he eventually got, and bullied him into taking the plea agreement.

4. Prosecutorial misconduct by constantly switching prosecutors during his case.

5. Prosecutorial misconduct because government relied on perjured evidence at suppression hearing regarding circumstances of Trooper Shafer's decision to follow him to the truck stop.

6. Defendant's counsel was ineffective by making him plead guilty before receiving the ruling on suppression motion.

7. Defendant's counsel was somehow ineffective with respect to his mental evaluation and for not ensuring he had his prescription glasses.

Before considering these claims individually, it is important briefly to address the special rules that govern consideration of a motion to vacate under 28 U.S.C. § 2255. First, a § 2255 motion may not test the legality of matters which could have been resolved before this court in the

first instance or on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982); *United States v. Cook*, 997 F.2d 1312, 1320 (10th Cir. 1993). A defendant who fails to raise an issue before this court or on direct appeal may present it in a § 2255 motion only if he can demonstrate cause for his procedural default, and either actual prejudice from the alleged errors, or that a fundamental miscarriage of justice will occur if his claim is not addressed. *United States v. Allen*, 16 F.3d 377, 378 (10th Cir. 1994). Moreover, where the government raises the procedural bar issues in response to a defendant's § 2255 motion, the court is obliged to address that issue and, if appropriate, dispose of the case on that basis. *Id.* 16 F.3d at 379.

In order to establish "cause," a defendant must show that there existed some external impediment which prevented him from raising the claim during the original proceedings on his case, or on direct appeal. *Murray v. Carrier*, 477 U.S. 478, 492 (1986). A defendant could show "cause" by demonstrating that his non-compliance was the product of some kind of governmental or official interference, or that his claim was so novel that its legal basis was not reasonably available to his counsel. *Id.*, 477 U.S. at 488; *see also Reed v. Ross*, 468 U.S. 1, 16 (1984). However, neither ignorance nor inadvertence is sufficient in this regard, nor is a failure to recognize the factual or the legal basis for the claim. *Id.*

A claim of ineffective assistance of counsel is another way a defendant may overcome the procedural bar rules in a § 2255 proceeding. To establish ineffective assistance of counsel, the defendant must show that his attorney's performance was deficient and that, but for that deficient performance, there is a reasonable probability that the outcome of a proceeding involving the defendant would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Haddock*, 12 F.3d 950, 955 (10th Cir. 1993).

8

To prove that his lawyer's performance was deficient, the defendant must show that the attorney's performance was not within the wide range of competence demanded of attorneys in criminal cases. *Laycock v. State of New Mexico*, 880 F.2d 1184 (10th Cir. 1989). The proper standard for measuring attorney performance is not that of perfection. *United States v. Haddock*, 12 F.3d at 955-56. Rather, it is that of reasonably effective assistance. *Gillette v. Tansy*, 17 F.3d 308, 310-11 (10th Cir. 1994). Moreover, as the Tenth Circuit noted in *Gillette*, a court's review of an attorney's performance is highly deferential and must be conducted, as much as possible, without regard to the often distorting effects of hindsight. *Id.* at 311.

> Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case.

*Id.* (*quoting Strickland v. Washington*, 466 U.S. at 689).

To establish prejudice, a petitioner also has a difficult burden. He must show more than a theoretical effect on the outcome of his case as a result of his attorney's errors. Rather, he must show that, but for those errors, there is a reasonable probability that the results would have been different, *i.e.*, that he would have been acquitted, or that he would not have pleaded guilty, or that he would have received a more favorable sentence. *Strickland v. Washington*, 466 U.S. at 694; *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *United States v. Reed*, 39 F.4th 1285, 1293 (10th Cir. 2022); *Lasiter v. Thomas*, 89 F.3d 699, 703 (10th Cir. 1996); *see also United States v. Moya*, 676 F.3d 1211, 1213-14 (10th Cir. 2012).

Moreover, a defendant challenging his conviction on the basis of ineffective assistance of counsel must do more than simply offer conclusory allegations; he must make particularized and specific factual averments which, if proven, would demonstrate both the ineffectiveness of his

attorney's performance and the resulting prejudice to his case. *Hatch v. State of Okla.*, 58 F.3d 1447, 1457 (10th Cir. 1995), overruled on other grounds by *Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994). This requirement must be satisfied even where, as here, the defendant is proceeding *pro se*, and notwithstanding the usual rule that *pro se* pleadings are to be liberally construed. *United States v. Fisher*, 38 F.3d at 1147.

In light of these standards, we address each of the Defendant's claims more or less in the order in which the Defendant has alleged them.

### 1. Suppression Order.

The Defendant's first claim appears to be that the court's resolution of his suppression motion was wrong on a couple bases (Doc. 145 [Defendant's motion] at 4 – Claim One). To the extent he argues the court's ultimate resolution of his suppression motion was wrong, that claim is procedurally barred because he hasn't shown why he couldn't have raised it on direct appeal. *Frady*, at 164 (*Frady's* cause and prejudice standards apply when defendant's appellate rights have been either <u>waived</u> or exhausted). And the fact that his plea agreement contained an appeal waiver is not an excuse that would obviate the procedural bar. *Frady, supra*, at 164; *United States v. Majid*, 196 F. App'x 685, 686-87 (10th Cir. 2006). Because he hasn't shown cause, his assault on this court's determination of his suppression motion is procedurally barred, and must be rejected. *Allen*, 16 F.3d at 379.

### 2. Ineffective Assistance of Counsel – Suppression Hearing.

In order, the Defendant next says his lawyer was ineffective because he allegedly conceded that he consented to the search of his vehicle (Doc. 145 at 4 – Claim One). It isn't clear what the Defendant is referring to. But in any event, as the court determined in its order denying the

10

suppression motion, the evidence established that Cheyenne Police Officer Matheney twice smelled the odor of marijuana emanating from the Defendant's vehicle, and Officer Johnson's K-9 Pavel affirmatively indicated on the Defendant's vehicle as to the presence of controlled substances odors from the Defendant's vehicle (Order at 3-4). Thus, without regard to any concession which may or may not have been made by Defendant's counsel concerning the Defendant's consent to search, the facts as found by the court independently established probable cause to search the vehicle based on Officer Matheney and the K-9 both detecting the odor of illicit drugs. *See Shaw v. Schulte*, 36 F.4th 1006, 1017 (10th Cir. 2022) (*citing United States v. Parada*, 577 F.3d 1275, 1282 (10th Cir. 2009) (dog alerts); *United States v. Kitchell*, 653 F.3d 1206, 1223 (10th Cir. 2011) (dog alerts); *United States v. Phillips*, 71 F.4th 817, 823 (10th Cir. 2023) (officer detecting smell of drugs).

Thus, the Defendant at a minimum has failed to establish prejudice with respect to this claim. Without regard to any consent issues, the evidence before the court was clear that the officers had probable cause to search his vehicle when they discovered the illicit drugs in it. This claim must be dismissed.

**3. Ineffective assistance of counsel for allowing the Defendant to believe he was promised a 60 month sentence.**

In his motion, the Defendant argues his attorney was ineffective for effectively bullying him into taking his plea deal, perhaps threatening him with life without parole as a possibility if he didn't accept the agreement, and alternatively, promising him he would get only 60 months if he did take it.

With regard to his "life without parole" issue, the Defendant did indicate at his change of plea hearing that he had decided to plead guilty under the terms of the plea agreement because he was "just trying to avoid life without parole" (COP Tr. at 8). But he also twice affirmed under oath

that nobody had caused him to accept his plea agreement by means of threats, coercion, or violence (*Id*. at 8, 9, and 22-23). Moreover, the agreement he made with the government allowed him to plead guilty to a violation implicating 21 U.S.C. § 841(b)(1)(B), as opposed to § 841(b)(1)(A), with which he was originally charged. The former carries a penalty range of from 5 to 40 years of imprisonment; the latter, which he evaded by his guilty plea, carries a sentencing range of from ten years to life imprisonment, the latter, of course, with no opportunity of parole. § 841(b)(1)(A).

So, quite literally, the Defendant's plea of guilty did avoid implicating a sentencing law with "life without parole" as its statutory maximum. On that score, his statement to that effect at his change of plea hearing was spot on. But while that is true, the Defendant doesn't pair that fact with any claim that his lawyer or anyone else threatened him that he was likely to receive a life sentence if he didn't plead guilty.

Indeed, as noted above, he repeatedly assured the court that his decision to plead guilty was not the product of any threats or coercion from anyone. And he repeatedly assured the court that his guilty plea was based on a complete understanding of his plea agreement's terms and conditions, was wholly voluntary, an exercise of his own free will, and made because he was in fact guilty as charged (*Id.* at 9-10, and at 22-23).

Where, as was plainly the case here, the court conducted a thorough plea colloquy with a defendant as required by Rule 11(b), Fed. R. Cr. P., and where a defendant repeatedly assures the court under oath that he understands his plea and its direct consequences, and when he repeatedly affirms for the court that his plea is voluntary and free from any threats or coercion, the court is entitled to hold the Defendant to his word, and not permit him later on to retract his sworn statements and claim his plea was somehow involuntary or not knowing. *United States v. Dominguez*, 998 F.3d 1094, 1106 (10th Cir. 2021). Such "[s]olemn declarations in open court carry

a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Moreover, "the truth and accuracy of [a defendant's] statements made at the Rule 11 proceedings should be regarded as conclusive in the absence of a believable, valid reason justifying a departure from the apparent truth of his Rule 11 statements." *Dominguez*, at 1106 (*quoting Hedman v. United States*, 527 F.2d 20, 22 (10th Cir. 1975) (*per curium*)).

Here, the Defendant has offered nothing in the way of a justification for why the court shouldn't regard as conclusive his answers to the court as to the intelligent and voluntary nature of his guilty plea. And in the absence of such reasons, any claim by him that he was somehow coerced or bullied into his guilty plea should be rejected.

Likewise specious is his claim that his lawyer somehow promised him that his sentence would not exceed 60 months if he pleaded guilty under the plea agreement. Once again, the Defendant assured the court at his plea hearing that he fully understood his plea agreement, both generally and specifically in respect to its stipulated 60-78 month sentencing range:

>THE COURT: All right.
>
>Does this plea agreement represent the complete agreement that you have with the United States?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: And do you feel that you understand the terms and conditions set forth in this plea agreement?
>
>THE DEFENDANT: Yeah. I could receive 60 to -- what? -- 78 months.
>
>THE COURT: It will be a -- a range of either 60 -- somewhere within 60 to 78 months.
>
>THE DEFENDANT: Probably get the 78.
>
>THE COURT: All right. And this is intended to be a binding plea agreement upon the Court, and we'll be discussing that.

>Has anyone made any other promises or assurances to you to cause you to enter into this plea agreement?
>
>THE DEFENDANT: No. I'm just trying to avoid life without parole.
>
>THE COURT: Understood.
>
>Has anyone caused you to sign this plea agreement by threat, coercion, or violence offered against you or those close?
>
>THE DEFENDANT: No, none that I can recall.

(COP Tr. at 7-8).

Thus, the Defendant's sworn statements to the court during his change of plea hearing unequivocally refute any notion that his attorney or anyone else promised him his sentence would be no more than 60 months. In the absence of any solid reason to disregard those sworn statements, the court must treat them as conclusive. *Dominguez*, at 1106; *Blackledge v. Allison*, at 74. This claim too must be rejected.

    **4.**    **Government's use of perjured testimony of Trooper Shafer.**

Next, the Defendant alleges the government relied on the perjured testimony of Wyoming Highway Patrol Trooper Shafer at his suppression hearing. In this regard, the Defendant claims the trooper failed to explain why he drove so fast on the day he was arrested at the Flying J to catch up with him on the highway, and he claims the notion that he had been speeding (*i.e.*, going 81 mph in a 75 mph speed zone – *see* PSR at 4) was a total fabrication used to railroad him (Defendant's motion – Doc. 145 at 5).

The problems with this claim are several.

First, the law is clear that the knowing use by a prosecutor of perjured testimony can constitute a violation of due process if certain circumstances are present. *See, e.g., Napue v. Illinois*, 360 U.S. 264, 269 (1959). In order to make out a proper *Napue* claim, a defendant must

establish that the witness' testimony was in fact knowingly false, that it was material to the resolution of a matter of consequence, and that the prosecutor who used the evidence knew it was false. *McBride v. United States*, 446 F.2d 229, 232 (10th Cir. 1971); *see also United States v. Garcia*, 793 F.3d 1194, 1207-08 (10th Cir. 2015); and *United States v. Wolny*, 133 F.3d 758, 762-63 (10th Cir. 1998).

The Defendant has satisfied none of these prerequisites. Putting aside as irrelevant the Defendant's misidentification of the trooper who first observed him speeding on I-80 (it was Gebauer, not Shafer – *see* PSR at 4), his claim that the trooper affirmatively lied about the reasons why he caught up with and followed the Defendant to the Flying J Truck Stop, conducted surveillance, or contacted the Cheyenne Police Department and DCI is wholly unsupported by any facts or evidence. It is a naked accusation with no apparent basis in fact beyond his own conclusory and self-interested speculation. That plainly isn't enough even to justify further pursuing the issue in an evidentiary hearing. *See United States v. Fisher*, 38 F.3d at 1147; *see also United States v. Garcia*, 825 F. App'x 571, 575 (10th Cir. 2020); *United States v. Henderson*, 179 F. App'x 535, 539-40 (10th Cir. 2006).

Beyond that, the Defendant hasn't shown how the trooper's motivation for intercepting him, following him to the Flying J Truck Stop, surveilling him and his activities from a distance, and then having a plain clothes officer walk past his vehicle in a public place when he was absent implicated any of his rights. Likewise, he hasn't suggested how his rights were implicated by the police having a K-9 detection dog conduct a free air sniff around his vehicle, when it was left in the public parking lot and while he himself was absent. None of those things implicated his liberty interests or his privacy interest. And after Officer Matheney smelled marijuana, and after his observation was seemingly confirmed by the K-9 – all of which, again, happened while the

15

Defendant was inside the Flying J playing a slot machine – the jig, as it were, was up. They had, at that point, probable cause to search the Defendant's vehicle, and upon discovery of his methamphetamine and marijuana, they had probable cause to arrest him.

In other words, the Defendant's claim concerns only the veracity of Trooper Gebauer's testimony about his subjective motivation for chasing after the Defendant and following up with him after he exited I-80 and went to the Flying J. But subjective motivations in this context don't matter; only objective facts. *Whren v. United States*, 517 US 806, 813 (1996). And the objective facts – the free air sniffs by Matheney and Pavel of the Defendant's vehicle while it was parked in the open in a public parking lot where they had an absolute right to be, and when the Defendant was voluntarily absent, were what mattered. Gebauer's subjective motivations were immaterial.

And lastly, of course, the Defendant has to show not only that Trooper Gebauer's testimony was materially false, but also that the prosecutor knew it was false and used it anyway. He doesn't even really allege that, never mind does he offer facts that might prove it. For this reason too, his claim is meritless.

Finally, the Defendant did not raise this claim on direct appeal, and he hasn't alleged the requisite cause or prejudice under *Frady* to excuse his procedural default. For that reason too, his claim on this issue must be rejected. *See, e.g., United States v. Gaither*, 300 F. App'x 612, 614-15 (10th Cir. 2008).

### 5. Other claims.

The foregoing issues are the ones that more or less correspond to cognizable habeas claims under § 2255. Aside from those, his papers contain other assorted grievances that generally contend he was inexplicably the victim of a corrupt conspiracy involving the prosecutor, his lawyer, and the court; that he was "railroaded;" his lawyer left him "stuck" (*i.e.*, detained) in

Colorado, and failed to ensure he had his prescription eyeglasses; and that there were shenanigans involved in his mental evaluations. None of these generalized and conclusory grievances support a cognizable claim under § 2255. All of them, perhaps with the exception of his claim his lawyer was inexplicably in cahoots with the government and the court to secure his unjust conviction, are in any event procedurally barred under *Frady*, since he doesn't address why they weren't raised on direct appeal. And in regard to his claim of a vast conspiracy between the court, his lawyer and the government, he hasn't proffered any facts to establish such a claim, and of course none exist. This claim must be rejected as well.

## CONCLUSION

For the reasons outlined above, the cognizable issues raised by the Defendant in his motion are plainly without merit. Moreover, because his motion can be resolved on the basis of the record now in existence, there is no justification for an evidentiary hearing on his claims. *See United States v. Lemon*, 2021 WL 5858405 at *5 (10th Cir. 2021) (unpublished) (*citing United States v. Cervini*, 379 F.3d 987, 993 (10th Cir. 2004) and *United States v. Moya*, 676 F.3d 1211, 1214 (10th Cir. 2012)); *see also* 28 U.S.C. § 2255(b). His motion should be denied.

**DATED** this 9th day of November, 2023.

          Respectfully submitted,

          NICHOLAS VASSALLO
          United States Attorney

By:   */s/ David A. Kubichek*
      DAVID A. KUBICHEK
      Assistant United States Attorney

## CERTIFICATE OF SERVICE

This is to certify that on this 9th day of November, 2023, the foregoing **United States Response to Defendant's Motion to Vacate Under 28 U.S.C. § 2255** was served upon the following by depositing the same, postage prepaid, in the United States mail, addressed to:

**Michael Anthony Smith #22124-509**
FPC Montgomery
Federal Prison Camp
Maxwell Air Force Base
Montgomery, AL 36112

                                                  */s/ Vickie L. Smith*
                                                  UNITED STATES ATTORNEY'S OFFICE